IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELAINE A.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-2966-SMY |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Elaine A. seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in January 2021, alleging a disability onset date of February 1, 2019 (Tr. 205). After the state agency denied her application, Plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") in December 2022 (Tr. 33-59, 61-77. 80-88, 105).

The ALJ denied Plaintiff's application on January 27, 2023 (Tr. 12-32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1-6). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

**Issues Raised by Plaintiff**

Plaintiff raises the following issues for judicial review:

1. The ALJ erred by failing to find that Plaintiff's upper extremity neuropathy/carpal tunnel bilaterally and right ulnar neuropathy at the elbow were severe impairments.

**Legal Standard**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He found that Plaintiff suffered from the following severe impairments since the alleged onset date of disability: "degenerative disc disease of the cervical spine, status post (failed) surgery, and ulcerative colitis" (Tr. 17). The ALJ further found that none of Plaintiff's impairments or combination of impairments met or medically equaled the criteria of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 20-21).

The ALJ determined that Plaintiff had the RFC to do the following:

Light work as defined in 20 CFR 404.1567(b). Specifically, she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can sit 6 hours in an eight-hour workday; and can stand or walk for a combined 4 hours in an eight-hour workday. Plaintiff is limited to occasional bilateral overhead reaching. She can never climb ladders, ropes, and scaffolding, and can never crawl. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. Plaintiff

must avoid hazards in the workplace, defined as she can never work at unprotected heights and never work in an environment where she is exposed to moving mechanical parts. Plaintiff must avoid concentrated exposure to vibration and extreme cold.

(Tr. 21). The ALJ concluded that Plaintiff was able to perform her past relevant work as an office manager, and as a result was not disabled (Tr. 25).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

## Evidentiary Hearing

Plaintiff was represented by counsel at her hearing on December 8, 2022 (Tr. 33-59). She testified to the following: Plaintiff was born on March 2, 1964 (Tr. 42). She last worked as an office manager, but quit her job in January 2019 because she could no longer perform her job duties to the best of her ability (Tr. 44). Plaintiff has pain that starts in her neck and radiates into both shoulders down her arms. *I*d. at 45-45. She is very weak and rated her pain as an 8 out of 10 at all times. *Id.* She suffers from neuropathy in the arms. *Id.* Her cervical pain is constantly 8 out of 10 in severity, her left arm pain is 8 or 9 out of 10 in severity, and her right arm pain is 6 out of 10. *Id.* The pain is exacerbated by activities such as lifting and reaching above the head. *Id.* Plaintiff estimated that she could lift a half gallon of milk with both hands (Tr. 47). She can sit 10-15 minutes while using the computer, but is able to sit longer in a normal chair (Tr. 48). Plaintiff can stand a few minutes and walk 10-15 minutes at a time. *Id.* at 49. She can provide selfcare.

A vocational expert ("VE") testified at the hearing. The ALJ posed hypothetical questions to the expert that corresponded to the ultimate RFC findings. *Id*. The VE testified that work exists in the national economy for an individual with Plaintiff's conditions. *Id*.

**Relevant Medical Records**

Plaintiff suffers from cervical degenerative disc disease (Tr. 308). She underwent cervical discectomy and fusion in September 2013 (Tr. 312, 364). In early 2018, Plaintiff returned for additional specialist treatment and evaluation. A cervical x-ray in February 2018 showed the spine was normally aligned and surgical hardware was in the expected position (Tr. 312). A cervical MRI showed degenerative disc and joint disease, mild disc bulge, and mild to moderate neural foraminal stenosis (Tr. 374-375). The following month, Plaintiff complained of chronic neck pain and headache, and her primary care provider diagnosed her with cervicalgia (Tr. 444-491).

Plaintiff had a neurosurgical evaluation in May 2018 for neck pain and pain and paresthesia of the bilateral arms (Tr. 364). A CT scan of the cervical spine revealed prior ACDF procedure with solidly fused C4-C7 levels with capacious central canal, and additional findings of cervical spondylosis without high grade stenosis (Tr. 321). Clinical exam at the time showed normal strength, sensation, and gait in July 2018 (Tr. 357-367). A thoracic MRI in July 2018 revealed spondylosis, disc bulges, and herniation at T12-L1 and status post C4-7 fusion (Tr. 404-406-414). Plaintiff underwent an attempt at a cervical spinal cord stimulator implantation in July 2018 to address chronic neck and arm pain. However, the operative report indicates that there was a problem getting the electrode in position, so the procedure was terminated (Tr. 318-324).

The next treatment visit was not until a primary care visit on July 9, 2019 (Tr. 462-467). She complained of neck pain and weakness. *Id.* Clinical exam showed decreased cervical range

of motion, bony tenderness, and pain. *Id.* Later that month, Plaintiff denied any headaches, numbness, arthralgias, or other symptoms at a well-woman exam (Tr. 428-429). Clinical exam showed normal neck and musculoskeletal range of motion. *Id.*

In January 2020, Plaintiff was re-prescribed Cymbalta for her depression and pain (Tr. 456-461). On clinical exams through July 2022, Plaintiff's cervical range of motion was normal (Tr. 509-598). Additional testing in 2022 established mostly mild findings (Tr. 608-609, 657-660).

### State Agency Consultants' Opinions

Charles Murphy, M.D., found that Plaintiff had severe degenerative disc disease of the cervical spine and ulcerative colitis with the ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He further found that Plaintiff could sit 6 for hours, stand and/or walk for 6 hours per eight-hour workday, occasionally climb ladders, ropes, or scaffolds; occasionally stoop, crouch, and crawl; frequently climb ramps and stairs and knee; occasionally reach overhead bilaterally; and avoid even moderate exposure to vibration (Tr. 61-77).

On reconsideration, Ranga Reddy, M.D. found the same limitations, except he opined that Plaintiff should avoid concentrated exposure to vibrations and hazards (Tr. 80-89).

### Discussion

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). It is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," *Id.*, and must be supported by substantial evidence. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). An "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability

finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). However, "an ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Id.* (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)).

Plaintiff asserts the record clearly established that she has severe impairments of carpal tunnel syndrome bilaterally and right ulnar neuropathy. She contends that the ALJ erred in acknowledging the impairments, but finding them non-severe.

The ALJ is required to determine at step 2 of the sequential analysis whether the claimant has an impairment or combination of impairments that is severe. *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010). A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); *cf.* 404.1521(a). The ALJ will proceed to the remaining steps of the evaluation process if it is determined that the claimant has one severe impairment. *Id.*; 20 C.F.R. § 404.1523.

Here, the ALJ considered an EMG/NCS of Plaintiff's upper extremities from June 2022 that showed mild entrapment neuropathy consistent with carpal tunnel syndrome bilaterally and right ulnar entrapment neuropathy at the elbow. He acknowledged Plaintiff's testimony that she drops items due to neuropathy, wrote infrequently due to pain, and only used the computer in short increments. However, the ALJ noted that Plaintiff had not received specific treatment, such as carpal tunnel release or even wore wrist braces, and no clinical exams showed significant limitations Plaintiff's use of her hands. Based on the medical records, the ALJ concluded that Plaintiff's carpal tunnel and right ulnar entrapment neuropathy at the elbow were not severe.

Whether a particular ailment is found non-severe at step 2 "is of no consequence" when an ALJ recognizes numerous other severe impairments and is therefore obligated to proceed with

remaining steps of the evaluation process. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (citing 20 C.F.R. § 404.1523; and then collecting cases). This finding does not mean that the ALJ denied that Plaintiff experienced pain from her carpal tunnel and ulnar neuropathy, only that he did not believe the pain was severe enough to disable Plaintiff to the extent she claimed. *See Schloesser v. Berryhill*, 870 F.3d 712, 719 (7th Cir. 2017).

As required, at step four in the evaluation, the ALJ considered all of Plaintiff's medically determinable impairments, including those he found non-severe, when assessing Plaintiff's RFC. While Plaintiff argues that the record supported additional manipulative limitations, the medical evidence she cites relates to her cervical degenerative disc disease – not carpal tunnel and right ulnar neuropathy. Indeed, the ALJ found that Plaintiff's cervical degenerative disc disease contributed to her exertional, postural, reaching, and environmental functional limitations and formulated the RFC to account for those limitations. The ALJ's RFC determination was not only supported by the medical evidence, but also by the state agency consultants who opined that Plaintiff could perform light work with additional limitations.

## Conclusion

After careful review of the record, the Court finds that ALJ's findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED.** The Clerk of Court shall enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED:** September 23, 2024

_____
**STACI M. YANDLE**
**United States District Judge**